# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TAMBU PATRICK, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 14-01687 (RC) |
| | : | |
| v. | : | Re Document Nos.: 11, 17 |
| | : | |
| DISTRICT OF COLUMBIA, *et al.* | : | |
| | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

## I. INTRODUCTION

In this action, Plaintiff Tambu Patrick seeks damages resulting from an altercation in which Mr. Patrick alleges that police officers beat him and caused him severe injuries. *See* Compl., ECF No. 1. His complaint alleges three claims under District of Columbia tort law (Counts I – III) and four constitutional claims under 42 U.S.C. § 1983 (Counts IV – VII) against Defendant the District of Columbia (the "District") and other District officials.[1] *See id.* The District moves to dismiss Mr. Patrick's tort claims, arguing in part that Mr. Patrick failed to provide adequate notice under D.C. Code § 12-309 for the three claims. *See* Def.'s Mot. Dismiss 4–6, ECF No. 11. The District further moves to dismiss Mr. Patrick's four constitutional claims,

---

[1] In his complaint, Mr. Patrick names the District, Assistant Prosecuting Attorney Ronald Machen, Metropolitan Police Department Officers Tony Covington, Kristopher Plumley, Ursula Tutt, James Chastanet, Seth Anderson and Sean R. Hodges, and Superior Court Judge Frederick Sullivan (collectively, the "Defendants") as defendants in this suit. In its motion to dismiss, however, the District moves to dismiss Mr. Patrick's claims only as to the District. As such, Mr. Patrick's claims against the other defendants in this case are not at issue in this motion and are not addressed in this Memorandum Opinion.

arguing in part that Mr. Patrick failed to allege that a governmental policy caused the alleged constitutional violations as required by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). *See* Def.'s Mot. Dismiss 6–8. Because the District did not have adequate notice under D.C. Code § 12-309 of Mr. Patrick's common law tort claims, and because Mr. Patrick has conceded the District's motion with respect to his First, Fourth, Fifth, and Eighth Amendment claims, *see* Pl.'s Opp'n 10–11, ECF No. 17, the Court grants the District's motion as to all counts. The Court also grants Mr. Patrick leave to file an amended complaint asserting a Fourth Amendment claim that satisfies the requirements of *Monell*.

## II. FACTUAL BACKGROUND

In April 2013, Metropolitan Police Department Officers Tony Covington, Kristopher Plumley, Ursula Tutt, and James Chastanet (the "Officers") approached Mr. Patrick in the parking lot of his residence in Southeast Washington, D.C., and claimed to be investigating a complaint about narcotics activity. *See* Compl. 3. Both Mr. Patrick and the police incident report affidavit (the "Police Report") confirm that the Officers recognized Mr. Patrick from prior encounters, although the Police Report also states that Mr. Patrick was a suspect in the Officers' narcotics investigation. *See id.*; Police Report, Compl. Ex. A, ECF No. 1.

After this point, Mr. Patrick's account differs from that of the Police Report. *See id.* According to the complaint, Officer Chastanet ordered Mr. Patrick to step away from his vehicle, advising him that the Officers were going to pat him down and search the vehicle. *See id.* at 3–4. After Mr. Patrick asked whether or not the Officers had a search warrant, Officer Chastanet allegedly grabbed Mr. Patrick's keys, after which the Officers proceeded to "hit[] and punch[] Patrick all over his body," knocking Mr. Patrick to the ground and causing injury to his mouth, face, head, and hands. *See id.* at 4. While Mr. Patrick was on the ground, Officer Chastanet

kneed him in the mouth, and the Officers continued to beat him. *See id.* The Officers then proceeded to handcuff Mr. Patrick, place him under arrest, and transport him to the hospital for medical treatment. *See id.*

The Police Report, however, tells a different story.[2] According to the Police Report, Officer Chastanet patted-down Mr. Patrick because Mr. Patrick both "had a reputation for weapon possession" and kept reaching into the interior of his vehicle during their conversation. *See* Police Report. During this pat-down, Officer Chastanet felt a "large, hard object" – later determined to be a black handgun – on the right side of Mr. Patrick's waistband. *See id.* This caused Mr. Patrick to start running away, but after he reached for his gun, the Officers reacted by tackling Mr. Patrick in an attempt to subdue him. *See id.* The Officers' attempt to ground Mr. Patrick caused his injuries, which the Police Report describes as back pain as well as "a small amount of blood coming from the left side of [Mr. Patrick's] mouth." *Id.* After the Officers secured the handgun and restrained Mr. Patrick, they placed Mr. Patrick under arrest, transported him to the hospital, and later searched Mr. Patrick's vehicle, in which the Officers allegedly found several different types of narcotics. *See id.*

Several days after this altercation, a grand jury indicted Mr. Patrick on a charge of unlawful possession of a firearm, after which Mr. Patrick was "preventively detained." *See* Compl. 8; Docket, Compl. Ex. B, ECF No. 1. About a month later, in May 2013, Mr. Patrick was released from detention and the charge against him was dismissed. *See* Compl. 5.

---

[2] Although the Court assumes the truth of the complaint's factual allegations, the Court considers the Police Report given that it is "attached as [an] exhibit[t] or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal citations and quotation marks omitted); *see also* Police Report, Compl. Ex. A.

In October 2014, Mr. Patrick brought this action, alleging seven counts against the Defendants for the April 2013 incident leading to Mr. Patrick's arrest. *See* Compl. In Count I, Mr. Patrick puts forth a claim of false imprisonment, asserting that the Defendants illegally arrested him without a warrant or due process of law, and that the Officers deliberately falsified the Police Report. *See id.* at 1, ¶¶ 24–25; Def.'s. Mot. Dismiss 2. Mr. Patrick also asserts claims of assault and battery (Count II) and negligence (Count III) against the Defendants. *See* Compl. ¶¶ 26–28. Furthermore, in Counts IV through VII, Mr. Patrick contends that Defendants violated his constitutional rights under the First, Fourth, Fifth, and Eighth Amendments, respectively. *See id.* ¶¶ 29–37.

Now before the Court is Defendant the District of Columbia's motion to dismiss all seven of Mr. Patrick's claims as to the District. *See* Def.'s Mot. Dismiss. The motion is now fully briefed and ripe for decision.

### III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Although a court generally cannot consider matters beyond the pleadings at the motion-to-dismiss stage, it may consider "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[.]" *Ward v. D.C. Dep't of Youth Rehab. Servs.,* 768 F.

Supp. 2d 117, 119 (D.D.C. 2011) (internal citations and quotation marks omitted).

## IV. ANALYSIS

### A. Counts I–III: False Imprisonment, Assault and Battery, and Negligence

The District argues that the Court should dismiss Mr. Patrick's common law tort claims

of false imprisonment (Count I), assault and battery (Count II), and negligence (Count III)

because Mr. Patrick did not comply with the notice requirement in D.C. Code § 12-309.[3] *See*

Def.'s Mot. Dismiss 4–6.

"In order to maintain a common law tort claim against the District, a plaintiff must satisfy

the mandatory notice requirement set forth" in section 12-309. *Feirson v. District of Columbia*,

315 F. Supp. 2d 52, 55 (D.D.C. 2004).[4] Section 12-309 provides:

> [A]n action may not be maintained against the District of
> Columbia for unliquidated damages to person or property unless,
> within six months after the injury or damage was sustained, the
> claimant, his agent, or attorney has given notice in writing to the
> Mayor of the District of Columbia of the approximate time, place,
> cause, and circumstances of the injury or damage.

D.C. Code § 12-309. The "cause" requirement for adequate notice entails two conditions: the

notice must "disclose . . . the factual cause of the injury" and evince "a reasonable basis for

anticipating legal action as a consequence." *Washington v. District of Columbia*, 429 A.2d 1362,

1366 (D.C. 1981); *see also Mazloum v. D.C. Metro. Police Dep't*, 522 F. Supp. 2d 24, 49

---

[3] The District also argues that Mr. Patrick's intentional tort claims (Counts I and II) are barred by the statute of limitations in D.C. Code § 12-301(4), and that Mr. Patrick fails to allege sufficient facts to support a negligence claim (Count III). *See* Fed. R. Civ. P. 12(b)(6); Defs.' Mot. Dismiss 4–5. Because the Court concludes that Mr. Patrick failed to provide the District with adequate notice under § 12-309 for all of his tort claims, the Court does not reach these alternative arguments.

[4] Although the question is not squarely presented today, the Court notes that another judge of this Court, upon reviewing decisions from the D.C. Court of Appeals and D.C. Circuit, concluded that section 12-309's requirements are non-jurisdictional. *See Maldonado v. District of Columbia*, 924 F. Supp. 2d 323, 332 (D.D.C. 2013).

(D.D.C. 2007) (explaining that the proper inquiry is whether the District "should have anticipated, as a consequence of receiving the police reports, that a complaint by plaintiff would be forthcoming"); *Allen v. District of Columbia*, 533 A.2d 1259, 1263 (D.C. 1987) (explaining that the notice must set forth details that "in and of themselves . . . signal the likelihood that this incident, more than any other, would generate legal action against the District").

Section 12-309 further provides that "[a] report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section." D.C. Code § 12-309. But the mere "existence of a police report does not necessarily mean that the District has received the type of actual notice which § 12-309 contemplates." *Allen*, 533 A.2d at 1262. Rather, in order for a police report to be "sufficient notice" under D.C. law, it "must contain the same information that is required in any other notice given under the statute." *Doe by Fein v. District of Columbia*, 697 A.2d 23, 27 (D.C. 1997) (citation omitted). In other words, it "must contain information as to time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice." *Washington*, 429 A.2d at 1367 n.17 (D.C. 1981) (citation omitted). At the same time, the purpose of the police report alternative to the notice requirement is to "take care of those instances in which actual notice is had by the District" even though the District has not received "technical notice." *Pitts v. District of Columbia*, 391 A.2d 803, 808 (D.C. 1978) (citation and internal alterations omitted). Thus, the four elements that make up the police report's content for purposes of section 12-309 – time, place, cause and circumstances – are to be "interpreted liberally." *Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C. 1995) (holding that the notice requirement of 12-309 is satisfied even when the police report in question lists a slightly inaccurate date and time because the District had actual notice of the possibility of claims against it). Nonetheless, section 12-309

permits notice by police report only when it "covers all the requisite information, easily found in one place." *Jenkins v. District of Columbia*, 379 A.2d 1177, 1178 (D.C. 1977). For instance, section 12-309 "does not contemplate the District government's perusal of criminal trial proceedings." *Id.* (holding that a police report coupled with a trial and an acquittal is not sufficient notice of a claim for false arrest).

Here, the parties do not dispute that the Police Report is the only arguably valid form of notice under section 12-309. *See* Pl.'s Opp'n 5; Def.'s Reply 2. Further, the Court makes the preliminary observations that the Police Report provides the District with sufficient information as to the "time," "place," and "factual cause" of Mr. Patrick's injuries.[5] *See* Police Report (explaining that Mr. Patrick's injuries resulted from the Officers' attempt to tackle him during the incident on April 10, 2013 in the lot behind Mr. Patrick's residence).

The dispositive question here, however, is whether the Police Report satisfies the "cause" requirement for adequate notice by providing details that set forth a "reasonable basis for anticipating legal action as a consequence" of the April 2013 altercation. *Washington*, 429 A.2d at 1366. Applying the above principles, the Court holds that the Police Report does not satisfy this requirement. Instead, the Police Report's version of events suggests that the Officers' actions were legally justified because the Officers had a reasonable suspicion that Mr. Patrick had weapons on his person.[6] *See* Police Report (explaining that Mr. Patrick "had a reputation for

---

[5] Because the Court concludes that the Police Report does not provide sufficient facts to satisfy the "cause" element of section 12-309, it does not reach the question of whether or not the Police Report provides sufficient facts to satisfy the "circumstances" element.

[6] In his complaint, Mr. Patrick argues that Metropolitan Police Department officers "deliberately falsified" the Police Report, *see* Compl. at 1, and in his response to the District's motion, Mr. Patrick raises further questions about the Police Report's specificity and accuracy, *see* Pl.'s Opp'n 5–6. But the factual accuracy of the Police Report is irrelevant at this stage. Rather, for purposes of this Court's inquiry under D.C. Code § 12-309, the question is whether the Police Report, as written, provides sufficient notice that would alert the District to possible claims

weapon possession" and "turned several times toward the interior of the vehicle"). Because police officers may conduct pat-downs when they have reasonable grounds to believe suspects are armed and dangerous, the Police Report's description of the pat-down does not suggest that it was illegal. *See Terry v. Ohio*, 392 U.S. 1, 30–31 (1968). Further, the Police Report describes Mr. Patrick's arrest in a manner as to render it legally justified because even without a warrant, a police officer may arrest an individual if the officer has probable cause to believe that the individual is committing a felony. *See Enders v. District of Columbia*, 4 A.3d 457, 467 (D.C. 2010). The Police Report's description of the Officers' tackling of Mr. Patrick, too, suggests that the tackling was legally permissible, because "[a] police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." *See Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997) (citation omitted).

Accordingly, although the Police Report does indicate that the Officers injured Mr. Patrick in the altercation, the details within the Police Report do not suggest "in and of themselves" that this incident "more than any other" would generate legal action.[7] *Allen*, 533 A.2d at 1263; *see also Washington*, 429 A.2d at 1366 (explaining the two-pronged test for a

---

against it. *See Washington*, 429 A.2d at 1366. Because the Police Report, on its face, describes the Officers' actions in a manner as to render them legally justified, the Court holds that the Police Report does not provide such notice.

[7] The District argues that Mr. Patrick's argument that the Police Report shows Fourth Amendment violations is irrelevant because section 12-309 does not apply to claims brought under 42 U.S.C. § 1983. *See* Def.'s Reply 21. While the District is correct that the notice requirement does not apply to constitutional claims, the court in *Shaw v. District of Columbia* stated that section 12-309 does not require that the police report identify the "particular cause of action" or "the precise legal theory upon which a plaintiff seeks relief," but instead only requires that it reflect a reasonable basis for anticipating legal action as a consequence. No. 05-1284, 2006 WL 1274765, at *8 (D.D.C. May 8, 2006). Even if this is the case, however, the Police Report here does not set forth details that indicate a reasonable basis for anticipating legal action under § 1983.

written notice or police report to satisfy the "cause" requirement of section 12-309). In other words, while a basis for potential legal action exists "in many law enforcement operations," there is nothing in the Police Report *itself* to suggest that this specific incident would lead to legal action against the District. *Allen*, 533 A.2d at 1263; *see also Doe by Fein*, 697 A.2d at 27, 29 (explaining that the Court's inquiry necessarily focuses on the "District's role" in the plaintiff's injuries and holding that "any inference of potential liability" evident from the police report at issue was "too remote to suggest the need for a 'focused investigation' by the District"). Although one could argue that any time a police report indicates that an individual was injured at the hands of District employees, litigation should be contemplated, the Court concludes that section 12-309's police report exception cannot be read so broadly as to encompass a police report that, on its face, indicates that the District employees acted appropriately. Moreover, "a police report of an arrest is presumptively devoid of any notice of a potential claim of injury or damage from false arrest, assault and battery, or negligence." *Allen*, 533 A.2d at 1263. Because the police report, on its face, indicates that the Officers acted appropriately despite causing an injury, the present case does not overcome this presumption.

Police reports found in other cases to constitute sufficient notice under section 12-309 contained specific details about the District's actions or inaction that gave rise to an inference that a plaintiff might allege that the District violated some law or legal duty.[8] *See, e.g.*, *Plater v.*

---

[8] Mr. Patrick cites *Rieser v. District of Columbia*, 563 F.2d 462, 476 (D.C. Cir. 1977), for the proposition that the Court, in assessing the sufficiency of notice, must consider, in addition to the Police Report, the narcotics activity complaint and the subsequent dismissal of the charge against him. *See* Pl.'s Opp'n 8. In *Rieser*, a parolee, whom the District had assisted in obtaining employment, raped and murdered a woman at his workplace. The D.C. Circuit held that a police report was sufficient notice under section 12-309 because it provided the District with facts "sufficient to lead it to those related facts" already within the District's possession about the parolee's prior convictions for murder and rape. *Rieser*, 563 F.2d at 476–77. The *en banc* court subsequently granted a petition for rehearing raising a jurisdictional challenge and vacated the

*D.C. Dep't of Transp.*, 530 F. Supp. 2d 101, 106 (D.D.C 2008) (holding that a police report

stating that a child had fallen on glass at a public bus stop was sufficient notice because "it is

well known that the District has a duty to exercise reasonable care to keep its streets in a safe

condition" (alterations and citations omitted)); *Pitts*, 391 A.2d at 809–10 (holding that a police

report stating that a child had fallen through a guard rail in a public housing project was

sufficient notice); *cf. Braxton v. Nat'l Capital Hous. Auth.*, 396 A.2d 215, 217–18 (D.C. 1978)

(when after a burglary, a plaintiff sued the District for negligence on a theory that the District

mishandled the master key to her public housing building, the police report in question was not

sufficient notice because there was nothing in the police report to suggest mishandling of a

master key).[9]

    Here, moreover, Mr. Patrick never submitted a citizen complaint specifically complaining

about the treatment he received at the hands of the MPD officers. *See, e.g.*, *Shaw*, 2006 WL

---

*Rieser* panel opinion. While *en banc* consideration was pending, the D.C. Court of Appeals decided *Jenkins*, which held that a police report suffices under section 12-309 only when it "covers all the requisite information, easily *found in one place*." *Jenkins*, 379 A.2d at 1178 (emphasis added). Subsequently, the *en banc* D.C. Circuit concluded that jurisdiction was proper in *Rieser* and, without "resolv[ing] En banc . . . the merits of the local law issues," reinstated the panel opinion's section 12-309 analysis. *Rieser v. District of Columbia*, 580 F.2d 647, 649 (D.C. Cir. 1978) (en banc). Even assuming that the *en banc* court's reinstatement of the panel's section 12-309 analysis without "resolv[ing]" the issue itself constitutes a holding on the matter, this Court is still bound by the D.C. Court of Appeals' earlier decision in *Jenkins* to the extent that *Rieser* (either the panel or *en banc* opinion) conflicts with *Jenkins*. *See Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 843 (D.C. Cir. 1998) ("When interpreting the common law of the District of Columbia, we follow the decisions of the District of Columbia Court of Appeals, which is, for *Erie* doctrine purposes, treated as if it were the highest court of the state.").

[9] In *Jones v. Ritter*, 587 F. Supp. 2d 152 (D.D.C. 2008), the court held that a police report was sufficient notice when it stated that police officers, while chasing a gun-wielding plaintiff, tackled and pepper-sprayed him, thereby causing his injuries. *Id.* at 159; *see also Jones v. Ritter*, No. 07-1674, Opp'n Ex. 1, ECF No. 33-1. As in the present case, the police report in *Jones* describes the police officers' actions in a manner as to render them legally justified, and, like in this case, the claim to be derived from the *Jones* police report was against the officers themselves who prepared the report. The analysis, however, is thin, and does not illuminate how the court reached its conclusion. Thus, this Court declines to follow *Jones* here.

1274765, at *8 (describing complaint summary sheet that constituted sufficient notice). Absent any such complaint by Mr. Patrick, there was no reason on the face of the Police Report for the District to "anticipate … that a complaint by [Mr. Patrick] would be forthcoming." *Mazloum*, 522 F. Supp. 2d at 49 (citation omitted). This standard must be met to satisfy the "cause" element of the notice requirement of section 12-309. *See* D.C. Code § 12-309; *Washington*, 429 A.2d at 1366 (discussing the two requirements needed for police reports to satisfy the "cause" element of section 12-309). Accordingly, because the Police Report does not set forth sufficient details providing "a reasonable basis for anticipating legal action as a consequence" of the April 2013 incident, the Court concludes that it does not meet the notice requirement of D.C. Code § 12-309.[10] *Washington*, 429 A.2d at 1366.

Because Mr. Patrick has not complied with the notice requirement of section 12-309, the Court dismisses Mr. Patrick's common law tort claims of false imprisonment, assault and battery, and negligence (Counts I–III) as to the District.[11]

## B. Count V: Violation of Fourth Amendment Rights

The District further argues that the Court should dismiss Mr. Patrick's Fourth Amendment claim (Count V) under 42 U.S.C. § 1983 because Mr. Patrick's complaint fails to comply with the doctrine of *Monell v. Department of Social Services of the City of New York*,

---

[10] Mr. Patrick correctly points out that "requirements with respect to the content of the notice are to be interpreted liberally," and the Court is to resolve "close cases" in favor of compliance with the statute. *Wharton*, 666 A.2d at 1230 (emphasis omitted); Pl.'s Opp'n 8. The Court nonetheless concludes that the Police Report is insufficient notice under section 12-309.

[11] Mr. Patrick also seeks leave to amend Count III of his complaint to allege a theory of "negligent hiring, training, and retention." *See* Pl.'s Opp'n 9. But because the Court concludes that this count is barred by D.C. Code § 12-309's notice requirement, Mr. Patrick's proposed amendment would be futile because the amended count "could not withstand a motion to dismiss." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002).

436 U.S. 658 (1978). *See* Def.'s Mot. Dismiss 6–7. As the Supreme Court explained in *Monell*, a court cannot hold a municipality liable under § 1983 on a "*respondeat superior* theory." 436 U.S. at 691. Instead, a plaintiff must establish that the municipality has "a policy or custom" that caused the injury that violated his constitutional rights. *See Singletary v. District of Columbia*, 766 F.3d 66, 72 (D.C. Cir. 2014) (citing *Monell*, 436 U.S. at 694). The District argues that because it is a municipality, *see* D.C. Code § 1-102, and because Mr. Patrick's complaint does not allege that the District has such a policy or custom, the Court must dismiss his claim. *See* Def.'s Mot. Dismiss 6–7.

Mr. Patrick does not dispute that his complaint fails to allege that the District has a policy or custom supporting police misconduct, and instead asks for leave to amend his complaint to "allege that D.C. policies supported and condoned police misconduct." *See* Pl.'s Opp'n 10. Because Mr. Patrick has effectively conceded that his complaint does not comply with *Monell*, the Court grants the District's motion to dismiss Count V. The Court, however, also grants Mr. Patrick's request for leave to file an amended complaint asserting a Fourth Amendment claim in a manner that satisfies the requirements of *Monell*. *See* Fed. R. Civ. P. 15; *Miss. Ass'n of Coops. v. Farmers Home Admin.*, 139 F.R.D. 542, 543 (D.D.C. 1991) ("[L]eave to amend is to be granted absent bad faith, dilatory motive, undue delay, or prejudice on the non-moving party." (citations omitted)).

## C. Counts IV, VI, and VII: Violation of First, Fifth and Eighth Amendment Rights

The District also argues that the Court should dismiss Counts IV, VI, and VII for failure to allege facts stating a plausible claim to relief, and for failing to comply with *Monell*. *See* Def.'s Mot. Dismiss 8–9. Because Mr. Patrick does not object to dismissal of these counts, *see*

Pl.'s Opp'n 11, the Court deems the District's arguments conceded, and grants the District's motion to dismiss these counts. *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

## V. CONCLUSION

For the above reasons, the District of Columbia's motion to dismiss (ECF No. 11) is **GRANTED**, and Mr. Patrick's motion for leave to file an amended complaint asserting his Fourth Amendment claim (ECF No. 17) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 4, 2015                                     RUDOLPH CONTRERAS
                                                            United States District Judge